JUDGE OETKEN

12 CIV 3060

MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael A. Faillace [MF-8436]
110 East 59th Street, 32nd Floor
New York, New York 10022
Telephone:     (212) 317-1200
Facsimile:      (212) 317-1620
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
LUIS LOPEZ, EDGAR GARCIA, ANGEL
NACIPUCHA, JULIO HERNANDEZ,
MANUEL CAMPOVERDE, VICTOR
AVILA, FREDY CAJAMARCA and
MANUEL OLMEDO *individually and on
behalf of others similarly situated,*

                            Plaintiffs,

                    -against-

MADISON GLOBAL LLC, MAIN LLC, MS
GLOBAL HOLDING CORP., MAJESTATE
TANTUM LLC, NELLO SUMMERTIME
LLC, NELLO (CATERING) LLC, NELLO
(FOOD) LLC, 999 RESTAURANT CORP.,
K-2 REST. CORP., TD SOURCE, INC.,
MIDTOWN TECHNOLOGIES INC., NELLO
NY LTD., NELLO ON MADISON, INC.,
1350 SIXTH AVENUE CORP. d/b/a/ NELLO,
NELLO BALAN, THOMAS MAKKOS,
GEORGE MAKKOS and PAUL NICAJ,

                            Defendants.
-------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION
UNDER 29 U.S.C. § 216(b)**

**ECF Case**

Plaintiffs Luis Lopez, Edgar Garcia, Angel Nacipucha, Julio Hernandez, Manuel

Campoverde, Victor Avila, Fredy Cajamarca, and Manuel Olmedo individually and on behalf of

others similarly situated (collectively "Plaintiffs"), by and through their attorneys, Michael

Faillace & Associates, P.C., upon their knowledge and belief, and as against Defendants

Madison Global LLC, Main LLC, MS Global Holding Corp., Majestate Tantum LLC, Nello

Summertime LLC, Nello (Catering) LLC, Nello (Food) LLC, 999 Restaurant Corp., K-2 Rest.

Corp., TD Source, Inc., Midtown Technologies Inc., Nello NY Ltd., Nello on Madison, Inc., and

1350 Sixth Avenue Corp., (together, "Defendant Corporations") and Nello Balan, Thomas

Makkos, George Makkos and Paul Nicaj (the "Individual Defendants, together with Defendant

Corporations, "Defendants"), allege as follows:

## NATURE OF THE ACTION

1.     Plaintiffs are present and former employees of Defendants.

2.     Defendants own, operate, or control two Italian restaurants. One is located at 696

Madison Avenue in Manhattan's Upper East Side, under the name of Nello, and the other is

located at 136 Main Street in Southampton, New York under the name Nello Summertime

Hotel/Restaurant.

3.     Upon information and belief, Defendants Nello Balan, Thomas Makkos, George

Makkos and Paul Nicaj serve or served as owners, managers, principles, or agents of Defendant

Corporations and through these corporate entities operate or operated the restaurant as a joint or

unified enterprise.

4.     Plaintiffs are employed primarily to perform various restaurant duties, such as

those of food runners, busboys, cooks, food preparers, cleaners and waiters.

5.     Defendants maintain a policy and practice of requiring Plaintiffs and other

employees to work in excess of forty (40) hours per week without providing the minimum wage

and overtime compensation required by federal and state law and regulations. Further,

Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they

had to work over 10 hours a day.

6.      In addition, over the last year or so, starting in or about January 2011, Defendants have selectively withheld weekly payments from Plaintiffs, to the point where each Plaintiff is owed approximately 5 or 6 weeks of unpaid weekly wages.

7.      For at least six years prior to the filing of this action – the statute of limitations under the New York State Labor Law – continuing to the present, Defendants have maintained a policy and practice of unlawfully appropriating Plaintiffs' tips and forcing them to pay for the costs of purchasing and maintaining their required uniforms. Defendants' conduct extended beyond Plaintiffs to all other similarly-situated employees. At all times relevant to this complaint, Defendants maintain a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

8.      Plaintiffs now bring this action on behalf of themselves and other similarly situated individuals, to recover unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and for violations of the N.Y. Lab. Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commission of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 137-1.7 (2006) (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

9.      Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question); 29 U.S.C. §§ 201 *et seq.*; and 28 U.S.C. § 1367(a) (supplemental jurisdiction over state law claims).

11.     Venue is proper in this District under 28 U.S.C. §1391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district. Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a restaurant located in this district. Further, Plaintiffs were employed by Defendants in this district.

## THE PARTIES

### *Plaintiffs*

12.     Plaintiff Luis Lopez ("Plaintiff Lopez" or "Mr. Lopez") is an adult individual residing in Bronx County, New York. Plaintiff Lopez has been employed by Defendants from approximately December 2005 to the present.

13.     Plaintiff Edgar Garcia ("Plaintiff Garcia" or "Mr. Garcia") is an adult individual residing in Queens County, New York. Plaintiff Garcia has been employed by Defendants from approximately August 2010 to the present.

14.     Plaintiff Angel Nacipucha ("Plaintiff Angel" or "Mr. Angel") is an adult individual residing in Jersey city, New Jersey. Plaintiff Angel was employed by Defendants from approximately May 2009 until October 2009 and again from approximately December 2009 until on or about August 2010.

- 4 -

15.     Plaintiff Julio Hernandez ("Plaintiff Hernandez" or "Mr. Hernandez") is an adult individual residing in New York County, New York. Plaintiff Hernandez has been employed by Defendants from approximately 1985 to the present.

16.     Plaintiff Manuel Campoverde ("Plaintiff Campoverde" or "Mr. Campoverde") is an adult individual residing in Queens County, New York. Plaintiff Campoverde has been employed by Defendants from approximately May 26, 2010 to the present.

17.     Plaintiff Victor Avila ("Plaintiff Avila" or "Mr. Avila") is an adult individual residing in Kings County, New York. Plaintiff Avila has been employed by Defendants from approximately March 2001 to the present.

18.     Plaintiff Fredy Cajamarca ("Plaintiff Cajamarca" or "Mr. Cajamarca") is an adult individual residing in Queens County, New York. Plaintiff Cajamarca has been employed by Defendants from approximately March 2004 to the present.

19.     Plaintiff Manuel Olmedo ("Plaintiff Olmedo" or "Mr. Olmedo") is an adult individual residing in Kings County, New York. Plaintiff Olmedo has been employed by Defendants from approximately May 2009 to the present.

### *Defendants*

20.     Defendants own, operate or control two Italian restaurants—one at 696 Madison Avenue on Manhattan's Upper East Side, under the name of Nello, and the other one 136 Main Street in Southampton, New York, under the name Nello Summertime Hotel/Restaurant, at all times relevant to this complaint.

21.     Defendant Madison Global LLC is a Delaware limited liability company that owns and operates Nello.

22.     Defendant Main LLC is a Delaware limited liability company that owns and operates Nello Summertime.

23.     Defendant MS Global Holding Corp. is a Delaware corporation that, along with Defendants Majestate Tantum LLC, owns and operates Defendants Madison Global LLC and Main LLC.

24.     Defendant Majestate Tantum LLC is a Delaware limited liability company that, along with Defendants MS Global Holding Corp., owns and operates Defendants Madison Global LLC and Main LLC.

25.     Defendant Nello Summertime LLC is a New York limited liability company that, for certain times during the period covered by this lawsuit, owned and operated Nello Summertime.

26.     Defendant Nello (Catering) LLC is a Delaware limited liability company that, upon information and belief, is owned and operated by Majestate Tantum LLC and employs Defendant Balan.

27.     Defendant Nello (Food) LLC is a Delaware limited liability company that owns the trademark and the name of "Nello," under which Defendant Corporations operate.

28.     Defendant 999 Restaurant Corp. is a New York corporation that for certain times during the period covered by this lawsuit owned and operated Nello.

29.     Defendant K-2 Rest. Corp. is a New York corporation that for certain times during the period covered by this lawsuit owned and operated Nello Summertime.

30.     Defendant TD Source, Inc. is a New York corporation that for certain times during the period covered by this lawsuit owned and operated Nello and/or Nello Summertime.

31.     Defendant Midtown Technologies Inc. is a New York corporation that for certain

- 6 -

times during the period covered by this lawsuit owned and operated Nello and/or Nello Summertime.

32.     Defendant Nello NY Ltd. is a New York corporation that for certain times during the period covered by this lawsuit owned and operated Nello and/or Nello Summertime. It is a corporation organized and existing under the laws of the State of New York. Upon information and belief it maintains its principal place of business at 696 Madison Avenue, New York, New York 10021.

33.     Defendant Nello on Madison, Inc. is a New York corporation that for certain times during the period covered by this lawsuit owned and operated Nello and /or Nello Summertime. It is a corporation organized and existing under the laws of the State of New York. Upon information and belief it maintains its principal place of business at 696 Madison Avenue, New York, New York 10021.

34.     Defendant 1350 Sixth Avenue Corp. is a New York corporation that for certain times during the period covered by this lawsuit owned and operated Nello and/or Nello Summertime.

### OWNERSHIP OF NELLO AND NELLO SUMMERTIME

35.     Nello and Nello Summertime, the two restaurants that are the primary entities involved in this lawsuit, are a single and joint employer and have had a high degree of interrelated and unified operations and share common management, centralized control of labor relations, common ownership, common control, common business purposes, and interrelated business goals.

36.     Defendants Madison Global LLC, Main LLC, MS Global Holding Corp., Majestate Tantum LLC, Nello (Catering) LLC, Nello (Food) LLC, Thomas Makkos, George Makkos and Paul Nicaj (collectively, the "Successor Employers") are the successors in interest

- 7 -

and the successor employers to Nello Balan, 999 Restaurant Corp., K-2 Rest. Corp., Nello

Summertime LLC, TD Source, Inc., Midtown Technologies Inc., Nello NY Ltd., Nello on

Madison, Inc., and 1350 Sixth Avenue Corp (collectively, the "Predecessor Employers").

37.    The Successor Employers assumed numerous liabilities of Balan and the

Predecessor Employers, including liabilities for unpaid rent and unpaid taxes.

38.    There has been a consolidation or merger of the Predecessor Employers and

Successor Employers as the agreements reached between them provide for Balan to obtain an

ownership interest in the Successor Employers' parent company, MS Global Holding Corp., upon

the completion of certain obligations set forth in the Asset Purchase Agreement.

39.    There is actual and apparent continuity of ownership between the Predecessor

Employers and the Successor Employers as Balan, the sole shareholder of the Predecessor

Employers, on information and belief, has continued to act as owner and may acquire ownership

of MS Global Holding Corp., one of the Successor Employers, according to the terms of the

Asset Purchase Agreement.

40.    There has been a continuity of ownership of the Restaurants as, even after

Madison Global LLC's and Main LLC's take-over of the Restaurants, Balan has continued as a

joint owner. Defendants continue to hold Balan out as the "owner" to the public, and even the

New York Times, in its April 14, 2010 review of Nello, referred to Nello as Balan's restaurant,

and featured a picture of Balan on the Internet version of the article that is captioned, "Nello

Balan, master of his own domain." There is no mention of any of the Successor Employers in the

review.

41.    There has been a *de facto* merger of the Predecessor Employers and Successor

Employers as evidenced by the continuity of management, personnel, physical location, assets,

and general business operation. The management and staff at the Restaurants have remained

- 8 -

largely unchanged since prior to the purchase, aside from the usual attrition of staff encountered at any restaurant. George Gutakolis ("Gutakolis") continues as General Manager and Zach Erdem ("Erdem") as Night Manager. The food, drinks and uniforms have remained largely unchanged. The restaurants did not close for any period of time when the Successor Employers assumed control, nor did they undergo any significant renovations or remodeling.

42.    The Successor Employers knew that Balan had committed violations of the FLSA and NYLL.

43.    Makkos, a friend of General Manager George Gutakolis, was a frequent visitor of the Restaurants before he took ownership and had full knowledge of the unlawful tip pool that existed at the Restaurants.

44.    Prior to taking over the Restaurants, Makkos' partner, Paul Nicaj, was informed by at least one employee about the unlawful tip pool and unpaid wages at the Restaurants.

45.    There was a dissolution of the predecessor company, 999 Restaurant Corp., by proclamation in or about April 2009.

46.    The Restaurants are housed in exactly the same physical locations, at the same addresses, and under the same names as they were before the Successor Employers assumed control. The Restaurants also continued to make use of the same flatware, dishes, glasses, table linens, and furniture as they used before the Successor Employers assume control.

47.    Defendant Nello Balan is an individual engaging (or who was engaged) in business with this judicial district during the relevant time period. Defendant Nello Balan is sued individually in his capacity as an owner, officer and/or agent of Defendant Corporations.

48.    Defendant Nello Balan possesses or possessed operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls or controlled significant functions of Defendant Corporations. He determined the wages and compensation of

- 9 -

the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

49.     Defendant Thomas Makkos is an individual engaging (or who was engaged) in business with this judicial district during the relevant time period. Defendants Thomas Makkos is sued individually in his capacity as an owner, officer and/or agent of the Defendant Corporations.

50.     Defendant Thomas Makkos possesses or possessed operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls or controlled significant functions of Defendant Corporations. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

51.     Defendant George Makkos is an individual engaging (or who was engaged) in business with this judicial district during the relevant time period. Defendant George Makkos is sued individually in his capacity as an owner, officer and/or agent of the Defendant Corporations.

52.     Defendant George Makkos possesses or possessed operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls or controlled significant functions of Defendant Corporations. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

53.     Defendant Paul Nicaj is an individual engaging (or who was engaged) in business with this judicial district during the relevant time period. Defendant Paul Nicaj is sued

- 10 -

individually in his capacity as an owner, officer and/or agent of the Defendant Corporations.

54.     Defendant Paul Nicaj possesses or possessed operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls or controlled significant functions of Defendant Corporations. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

### *Defendants Constitute Joint Employers*

55.     Defendants operate an Italian restaurant in Manhattan, New York, and an Italian restaurant/hotel in Southampton, New York.

56.     Defendants maintain as their principal place of business a centralized office which is located at 696 Madison Avenue, New York, New York 10021.

57.     The Individual Defendants Nello Balan, Thomas Makkos, George Makkos and Paul Nicaj each possess operational control over Defendant Corporations, possess an ownership interest in Defendant Corporations, and control significant functions of Defendant Corporations.

58.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

59.     Defendants possess or possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

60.    Defendants jointly employed Plaintiffs, and all similarly situated individuals, and are Plaintiffs' (and all similarly situated individuals') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

61.    In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

62.    Upon information and belief, Defendant Nello Balan (1) operates or operated Defendant Corporations as either an alter ego of himself, and/or (2) fails or failed to operate Defendant Corporations as an entity legally separate and apart from his own self, by among other things, (a) failing to adhere to the corporate formalities necessary to operate the Defendant Corporations as a corporation, (b) defectively forming or maintaining the corporate entity of Defendant Corporations, by among other things failing to hold annual meetings or maintaining appropriate corporate records, (c) transferring assets and debts freely as between all Defendants, (d) operating Defendant Corporations for his own benefit as the sole or majority shareholder, (e) operating Defendant Corporations for his own benefit and maintaining control over it as a closed corporation, (f) intermingling assets and debts of his own with Defendant Corporations, (g) diminishing and/or transferring assets to protect his own interests, and (h) other actions evincing a failure to adhere to the corporate form.

63.    Upon information and belief, Defendant Thomas Makkos (1) operates or operated Defendant Corporations as either an alter ego of himself, and/or (2) fails or failed to operate Defendant Corporations as an entity legally separate and apart from his own self, by among other things, (a) failing to adhere to the corporate formalities necessary to operate the Defendant Corporations as a corporation, (b) defectively forming or maintaining the corporate entity of Defendant Corporations, by among other things failing to hold annual meetings or maintaining

appropriate corporate records, (c) transferring assets and debts freely as between all Defendants, (d) operating Defendant Corporations for his own benefit as the sole or majority shareholder, (e) operating Defendant Corporations for his own benefit and maintaining control over it as a closed corporation, (f) intermingling assets and debts of his own with Defendant Corporations, (g) diminishing and/or transferring assets to protect his own interests, and (h) other actions evincing a failure to adhere to the corporate form.

64.    Upon information and belief, Defendant George Makkos (1) operates or operated Defendant Corporations as either an alter ego of himself, and/or (2) fails or failed to operate Defendant Corporations as an entity legally separate and apart from his own self, by among other things, (a) failing to adhere to the corporate formalities necessary to operate the Defendant Corporations as a corporation, (b) defectively forming or maintaining the corporate entity of Defendant Corporations, by among other things failing to hold annual meetings or maintaining appropriate corporate records, (c) transferring assets and debts freely as between all Defendants, (d) operating Defendant Corporations for his own benefit as the sole or majority shareholder, (e) operating Defendant Corporations for his own benefit and maintaining control over it as a closed corporation, (f) intermingling assets and debts of his own with Defendant Corporations, (g) diminishing and/or transferring assets to protect his own interests, and (h) other actions evincing a failure to adhere to the corporate form.

65.    Upon information and belief, Defendant Paul Nicaj (1) operates or operated Defendant Corporations as either an alter ego of himself, and/or (2) fails or failed to operate Defendant Corporations as an entity legally separate and apart from his own self, by among other things, (a) failing to adhere to the corporate formalities necessary to operate the Defendant Corporations as a corporation, (b) defectively forming or maintaining the corporate entity of

- 13 -

Defendant Corporations, by among other things failing to hold annual meetings or maintaining appropriate corporate records, (c) transferring assets and debts freely as between all Defendants, (d) operating Defendant Corporations for his own benefit as the sole or majority shareholder, (e) operating Defendant Corporations for his own benefit and maintaining control over it as a closed corporation, (f) intermingling assets and debts of his own with Defendant Corporations, (g) diminishing and/or transferring assets to protect his own interests, and (h) other actions evincing a failure to adhere to the corporate form.

66.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for Plaintiffs' services.

67.     In each year from 2006 to the present, Defendants, both separately and jointly, had gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

68.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As example, numerous items that were used in the restaurant on a daily basis were produced outside of the state of New York.

### Individual Plaintiffs

69.     Plaintiffs are current and former employees of Defendants, who were primarily employed to work as busboys, waiters, restaurant cleaners and receivers and accommodators of deliveries at Defendants' restaurants, performing a variety of duties.

70.     They seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Luis Lopez*

71.     Plaintiff Lopez has been employed by Defendants from approximately December 2005 through the present date at Defendants' 696 Madison Avenue location.

72.     Plaintiff Lopez is employed primarily as a porter and receiver of deliveries.

73.     Plaintiff Lopez's work duties required neither discretion nor independent judgment.

74.     Plaintiff Lopez regularly handles goods in interstate commerce, such as food supplies, utensils, and beverages produced outside of the State of New York.

75.     Plaintiff Lopez regularly works in excess of 40 hours per week.

76.     From April 2005 to the present date, Plaintiff Lopez typically has worked from 8:00 a.m. to 6:00 p.m. Thursdays through Tuesdays (typically 60 hours per week), though on many weeks he would be required to work seven days per week.

77.     Throughout his employment with Defendants, Plaintiff Lopez has been paid by check.

78.     From approximately April 2005 until on or about June 2008, Plaintiff Lopez was paid at a rate of $535 per week regardless of hours worked.

79.     From approximately July 2008 to approximately December 2009, Plaintiff Lopez was paid $686 per week for weeks he worked six days.  For times when he worked seven days, he would be paid $800 per week.

80.     From on or about January 2010 to present, Plaintiff Lopez has been paid at a rate of $9.50 per hour for forty hours, and a rate of $14.75 for approximately an additional 15 hours a week.

81.     However, Defendants do not pay Plaintiff Lopez for all the hours he actually works. Although he constantly complained to management about this, he was never paid for the unpaid hours they promised him they would make up in the future.

82.     Moreover,  Defendants have not paid Plaintiff Lopez any wages for at least five weeks.

83.     From approximately January 2010, Plaintiff Lopez's weekly pay was translated to an hourly wage that did not reflect when he is required to stay later or work a longer day than his usual schedule.

84.     Defendants only permit Plaintiff Lopez to take a 15-minute lunch break. However, Defendants' time recording system falsely records that Plaintiff Lopez takes an hour for lunch.

85.     Although Defendants do provide Plaintiff Lopez with a statement accounting for his alleged hours worked, it does not accurately reflect any of the hours he worked over 60 each week.

86.     No notification, either in the form of posted notices, or other means, was ever given to Plaintiff Lopez regarding overtime and wages as required under the FLSA and NYLL.

*Plaintiff Edgar Garcia*

87.     Plaintiff Garcia has been employed by Defendants from approximately August 2010 until the present date at Defendants' 696 Madison Avenue location.

88.     Plaintiff Garcia is employed as a busboy.

89.     Plaintiff Garcia's work duties required neither discretion nor independent judgment.

90.     Plaintiff Garcia regularly handles goods in interstate commerce, such as food supplies, utensils, and beverages produced outside of the State of New York.

91.     Plaintiff Garcia regularly works in excess of 40 hours per week.

92.     From August 2010 to December 2010, Plaintiff Garcia worked from 10:00 a.m. to 11:30 p.m. on Mondays, 10:00 a.m. to 5:00 p.m. on Tuesdays and Wednesdays, 10:00 a.m. to 11:00 p.m. on Thursdays and from 5:00 p.m. to 1:00 a.m. on Fridays (Approximately 48.5 hours per week).

93.     From January 2011 to February 2011, Plaintiff Garcia worked from 5:00 p.m. to 11:00 p.m. on Mondays and Wednesdays, from 10:00 a.m. to 5:00 p.m. on Tuesdays and Thursdays and from 5:00 p.m. to 11:30 p.m., on Fridays (approximately 32.5 hours per week).

94.     From March2011 to April 2011, Plaintiff Garcia worked from 5:00 p.m. to 1:00 a.m. on Mondays, from 4:30 p.m. to 11:00 p.m. on Tuesdays, Wednesdays and Thursdays (approximately 27.5 hours per week).

95.     Defendants' time records falsely show that Plaintiff Garcia takes a 1-hour meal break. However, Defendants required him to perform his work as a busboy during 30 minutes of his lunch break, even when they require him to work a double shift.

96.     Throughout his employment with Defendants, Plaintiff Garcia has been paid his wages by check.

97.     From approximately August 2010 until on or about February 2011, Plaintiff Garcia was paid at a rate of $4.10 per hour. However, Defendants didnot pay Plaintiff Garcia for all the hours he actually worked. Although he frequently complained to management about this, he was never paid for the unpaid hours they promise him they would make up in the future.

98.     From approximately March 2011 until on or about the present date, Plaintiff Garcia has been paid at a rate of $5.00 per hour. However, Defendants have not paid Plaintiff Garcia any wages for at least five weeks.

99.     Plaintiff Garcia's pay does not vary even when he is required to stay later or work a longer day than his usual schedule.

100.    Plaintiff Garcia and all the busboys and waiters are required by Defendants to hand all their tips to the manager at the end of the shift.

101.    During Plaintiff Garcia's employment, the manager added up all the cash and credit card tips made each night by the busboys and waiters from the restaurant's customers.

102.    Defendant Balan established and imposed an involuntary tip pool upon the restaurants' wait staff, requiring them to share a percentage of their tips with managers, cashiers, doormen, drivers and other non-tipped employees. Defendant Makkos continued this same tip-pooling policy.

103.    The accounting and distribution of the tip pool at the restaurant are solely at the prerogative of the owners of the restaurants.

104.    The tip pools at the Restaurants are divided by management so that each waiter and bartender receives a "full share" of the tip pool and each busboy gets a "half share" of the tip pool. However, wait staffs' shares were sometimes adjusted by Defendant Balan depending on whether they were in or out of favor with management.

105.    Employees who are "non-tipped" employees, however, also receive shares from the tip pool. Those individuals, some of whom should not receive any shares from the tip pool (much less a share greater than that of a waiter) include, *inter alia,* the following:

- 18 -

- Managers, currently General Manager Gutakolis and Night Manager Erdem, each receive a one-and-a-half share from the tip pool. These managers, who have the power to hire, fire, schedule employees and purchase supplies, also receive a weekly salary in addition to their share in the tip pool.

- Cashiers, including daytime cashier "David" and night-time cashier "Chen," each receive a one-and-one-quarter share from the tip pool. Cashiers, who have little to no customer interaction, are stationed at the cash register and are responsible for running credit cards, making change, going to the bank, dividing the pooled tips into appropriate shares, and running tip reports and sales reports at the end of their shifts.

106.    Although managers often receive "handshake" tips from customers, they keep these tips rather than putting them into the tip pool. As such, the protocol at the restaurant is that managers share the tips of the wait staff but the wait staff does not share in the tips given to managers.

107.    Plaintiff Garcia was not informed by Defendants that they were counting any of his tips received towards his wages, nor did Defendants keep track of the money from tips that they ultimately paid to Mr. Garcia or the other busboys and waiters.

108.    Defendants do not account for these tips in any daily or weekly accounting of Plaintiff Garcia's wages.

109.    No notification, either in the form of posted notices, or other means, was ever given to Plaintiff Garcia regarding overtime and wages as required under the FLSA and NYLL.

110.    Defendants required Plaintiff Garcia to purchase "tools of the trade" with his own funds —including 5 pairs of pants ($30 each), 2 pairs of shoes ($90 each). Thus, the total cost of the "tools of the trade" Plaintiff Garcia has been required to purchase as a busboy has been $330.00.

*Plaintiff Angel Nacipucha*

111.   Plaintiff Angel was employed by Defendants from approximately April 2009 until on or about October 2009 and from December 2009 until on or about August 2010 at Defendants' 696 Madison Avenue location.

112.   At all relevant times, Plaintiff Angel's duties included preparing and cooking the menu items.

113.   Plaintiff Angel's work duties required neither discretion nor independent judgment.

114.   Plaintiff Angel regularly handled goods in interstate commerce, such as food, beverages and cleaning supplies, produced outside of the State of New York.

115.   Plaintiff Angel regularly worked in excess of 40 hours per week.

116.   From approximately April 2009 until on or about October 2009, Plaintiff Angel worked from 2:00 p.m. to 11:45 p.m. six days a week (approximately 57 hours per week).

117.   From approximately December 2009 until on or about August 2010, Plaintiff Angel was scheduled to work from 10:30 a.m. to 9:30 p.m. six days a week (approximately 60 hours per week). However, Defendants constantly required him to work beyond his regularly scheduled hours.

118.   Defendants only permitted Plaintiff Angel to take a 15-minute lunch break. However, Defendants' time recording system falsely recorded that Plaintiff Angel had taken an hour for lunch.

119.   Throughout his employment with Defendants, Plaintiff Angel was paid his wages by check.

120.   In April 2009, Plaintiff Angel was paid $600 per week.

121.   From approximately May 2009 to October 2009 Plaintiff Angel was paid a salary of $900.00 per week

122.   During this period Plaintiff Angel's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

123.   From approximately December 2009 until August 2010, Plaintiff Angel was paid $13.41 per hour for the first 40 hours he worked in a week and the corresponding overtime for any hours worked between 40 and 60. However, Defendants did not pay Plaintiff Angel for any hours he worked over 60 in a week. This underpayment would add up to 5 hours per week.

124.   Although Defendants did provide Plaintiff Angel with a statement accounting for his alleged hours worked, it did not accurately reflect any of the hours he worked over 60 each week.

125.   No notification, either in the form of posted notices, or other means, was ever given to Plaintiff Angel regarding overtime and wages as required under the FLSA and NYLL.

126.   Although Plaintiff Angel was required to keep track of his time worked, the system falsely attributed one hour breaks when in fact he only had 15 minutes. In addition, the system did not reflect any hours Plaintiff Angel worked over 60 in a week.

*Plaintiff Julio Hernandez*

127.   Plaintiff Hernandez has been employed by Defendants from approximately 1985 until the present date at Defendants' 696 Madison Avenue location.

128.   At all relevant times, Plaintiff Hernandez's duties include preparing and cooking the menu items.

129.   Plaintiff Hernandez's work duties require neither discretion nor independent judgment.

- 21 -

130.    Plaintiff Hernandez regularly handles goods in interstate commerce, such as food, beverages and cleaning supplies, produced outside of the State of New York.

131.    Plaintiff Hernandez regularly worked in excess of 40 hours per week.

132.    From approximately February 2006 until the present date, Plaintiff Hernandez has worked from 5:00 a.m. to 4:00 p.m. six days a week (approximately 66 hours per week).

133.    Throughout his employment with Defendants, Plaintiff Hernandez has been paid his wages by check.

134.    From approximately February 2006 until the present Plaintiff Hernandez was paid a salary of approximately $1350.00 per week.

135.    In addition, Defendants have not paid Plaintiff Hernandez for at least 5 weeks of work during the last year.

136.    From February 2006 to the present date, Plaintiff Hernandez's pay has not varied regardless of hours worked.

137.    Although Defendants do provide Plaintiff Hernandez with a statement accounting for his alleged hours worked, it does not accurately reflect any of the hours he worked over 60 each week.

138.    No notification, either in the form of posted notices, or other means, was ever given to Plaintiff Hernandez regarding overtime and wages as required under the FLSA and NYLL.

139.    Since his pay holds no relation to the hours he actually works, Plaintiff Hernandez has not punched in or out of work for approximately one year.

*Plaintiff Manuel Campoverde*

- 22 -

140.     Plaintiff Campoverde has been employed by Defendants from approximately May 2010 until the present date at Defendants' 696 Madison Avenue location.

141.     At all relevant times, Plaintiff Campoverde's duties have included preparing and cooking the menu items.

142.     Plaintiff Campoverde's work duties required neither discretion nor independent judgment.

143.     Plaintiff Campoverde regularly handles goods in interstate commerce, such as food, beverages and cleaning supplies, produced outside of the State of New York.

144.     Plaintiff Campoverde regularly has worked in excess of 40 hours per week.

145.     From approximately May 2010 until on or about January 2012, Plaintiff Campoverde worked from 11:00 a.m. to 9:00 p.m. six days a week (approximately 60 hours per week).

146.     From approximately January 2012 until the present date, Plaintiff Campoverde has been scheduled to work from 11:00 a.m. to 9:00 p.m. four days a week (approximately 40 hours per week). However, Defendants constantly require him to work beyond his regularly scheduled hours, and do not pay him for all the additional hours he works.

147.     Throughout his employment with Defendants, Plaintiff Campoverde has been paid his wages by check.

148.     From approximately May 2010 to January 2011 Plaintiff Campoverde was paid a at a rate of $16.90 per hour for forty hours and $25.35 for an additional approximately 6 to 10 hours per week.

149.     From approximately January 2011 until the present date, Plaintiff Campoverde was paid a rate of $14.00 per hour for forty hours, and an additional $21.00 per hour for approximately 15 to 20 hours a week.

150.     However, Defendants have not paid Plaintiff Campoverde any wages for at least five weeks.

151.     Throughout his employment with Defendants, Plaintiff Campoverde's paid hours do not accurately reflect when he has been required to stay later or work a longer day than his usual schedule.

152.     Although Defendants did provide Plaintiff Campoverde with a statement accounting for his alleged hours worked, it does not accurately reflect the hours he worked over 60 each week.

153.     No notification, either in the form of posted notices, or other means, was ever given to Plaintiff Campoverde regarding overtime and wages as required under the FLSA and NYLL.

### Plaintiff Victor Avila

154.     Plaintiff Avila has been employed by Defendants from approximately March 2001 until the present date at Defendants' 696 Madison Avenue location.

155.     At all relevant times, Plaintiff Avila's duties have included preparing food.

156.     Plaintiff Avila's work duties require neither discretion nor independent judgment.

157.     Plaintiff Avila regularly handles goods in interstate commerce, such as food, beverages and cleaning supplies, produced outside of the State of New York.

158.     Plaintiff Avila regularly has worked in excess of 40 hours per week.

- 24 -

159.    From approximately February 2006 until the present date, Plaintiff Avila has worked from 7:00 a.m. to 5:00 p.m. six days a week (approximately 60 hours per week).

160.    From approximately December 2009 until on or about August 2010, Plaintiff Avila was scheduled to work from 10:30 a.m. to 9:30 p.m. six days a week (approximately 60 hours per week). However, Defendants constantly required him to work beyond his regularly scheduled hours.

161.    Defendants only permit Plaintiff Avila to take a 15-minute lunch break. However, Defendants time recording system falsely records that Plaintiff Avila has taken an hour for lunch.

162.    Throughout his employment with Defendants, Plaintiff Avila has been paid his wages by check.

163.    From approximately February 2006 until approximately May 2010, Plaintiff Avila was paid a salary of approximately $750.00 per week.

164.    From approximately May 2010 until the present date, Plaintiff Avila's has been paid at a rate of $11.72 per hour and $17.58 for hours over 40, for a total of approximately 58 to 68 hours per week.

165.    Throughout his employment with Defendants, Plaintiff Avila's pay has not accurately reflected when he has been required to stay later or work a longer day than his usual schedule.

166.    Although Defendants have provided Plaintiff Avila with a statement accounting for his alleged hours worked, it does not accurately reflect any of the hours he has worked over 60 each week.

167.    No notification, either in the form of posted notices, or other means, was ever given to Plaintiff Avila regarding overtime and wages as required under the FLSA and NYLL.

168.    Although Plaintiff Avila has been required to keep track of his time worked, the system falsely has attributed one hour breaks when in fact he does not have any break time at all.

169.    In addition, the system does not accurately reflect any hours Plaintiff Avila works over 60 in a week.

### Plaintiff Fredy Cajamarca

170.    Plaintiff Cajamarca has been employed by Defendants from approximately 2004 until the present date at Defendants' 696 Madison Avenue location.

171.    At all relevant times, Plaintiff Cajamarca's duties have included preparing and cooking the menu items.

172.    Plaintiff Cajamarca's work duties require neither discretion nor independent judgment.

173.    Plaintiff Cajamarca regularly handles goods in interstate commerce, such as food, beverages and cleaning supplies, produced outside of the State of New York.

174.    Plaintiff Cajamarca regularly has worked in excess of 40 hours per week.

175.    From approximately January 2006 until on or about August 2010, Plaintiff Cajamarca worked from 11:00 a.m. to 11:00 p.m. six days a week (approximately 72 hours per week).

176.    From approximately September 2010 until on or about January 2012, Plaintiff Cajamarca was scheduled to work from 2:00 p.m. to 12:00 a.m. six days a week (approximately 60 hours per week). However, Defendants constantly required him to work beyond his regularly scheduled hours.

177. From January 9, 2012 to the present date, Plaintiff Cajamarca has been scheduled to work from 2:00 p.m. to 12:00 a.m. from Wednesdays through Saturdays and from 9:00 a.m. to 7:00 p.m. on Sundays (approximately 50 hours per week).

178. Defendants only permitted Plaintiff Cajamarca to take a 15-minute lunch break. However, Defendants time recording system falsely has recorded that Plaintiff Cajamarca has taken an hour for lunch.

179. Throughout his employment with Defendants, Plaintiff Cajamarca has been paid his wages by check.

180. From approximately January 2006 to August 2010 Plaintiff Cajamarca was paid a salary of $700.00 per week.

181. During this period Plaintiff Cajamarca's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

182. From approximately September 2010 until January 2012, Plaintiff Cajamarca was paid $16.50 per hour for the first 40 hours he worked in a week and the corresponding overtime for any hours worked between 40 and 60.

183. However, Defendants do not pay Plaintiff Cajamarca for all the hours he actually works. Although he frequently complains to management about this, he has never been paid for the unpaid hours they promise him they would make up in the future.

184. In addition, Plaintiff Cajamarca has not been paid any wages for at least five weeks.

185. Although Defendants have provided Plaintiff Cajamarca with a statement accounting for his alleged hours worked, it has not shown any of the hours he worked over 60 each week.

- 27 -

186.    No notification, either in the form of posted notices, or other means, was ever given to Plaintiff Cajamarca regarding overtime and wages as required under the FLSA and NYLL.

187.    Although until recently, Plaintiff Cajamarca was required to keep track of his time worked, the system falsely attributed one hour breaks when in fact he only had 15 minutes. In addition, the system did not reflect the hours Plaintiff Cajamarca had worked over 60 in a week.

188.    Furthermore, for a period of time Defendants directed Plaintiff Cajamarca to stop punching in and out and instead to sign his name in a book.

*Plaintiff Manuel Olmedo*

189.    Plaintiff Olmedo has been employed by Defendants from approximately May 2009 until the present date at both Defendants' 696 Madison Avenue and Southampton locations.

190.    At all relevant times, Plaintiff Olmedo's duties have included preparing salads. Plaintiff Olmedo's work duties require neither discretion nor independent judgment.

191.    Plaintiff Olmedo regularly has handled goods in interstate commerce, such as food, beverages and cleaning supplies, produced outside of the State of New York.

192.    Plaintiff Olmedo regularly has worked in excess of 40 hours per week.

193.    From approximately May 2009 until on or about May 2010, Plaintiff Olmedo was scheduled to work from 11:00 a.m. to 11:00 p.m. six days a week at the Madison avenue location (approximately 72 hours per week).

194.    From approximately June 2010 until on or about September 2010, Plaintiff Olmedo was scheduled to work from 11:00 a.m. to 9:00 p.m. Thursdays through Sundays at the Southampton location, and from 11:00 a.m. to 11:00 p.m. on Tuesdays and Wednesdays in

Manhattan (approximately 64 hours per week). However, Defendants constantly required him to work beyond his regularly scheduled hours.

195.    From approximately September 2010 until on or about June 2011, Plaintiff Olmedo was scheduled to work from 11:00 a.m. to 11:00 p.m. six days a week at the Madison Avenue location (approximately 72 hours per week).

196.    From approximately June 2011 until on or about September 2011, Plaintiff Olmedo was scheduled to work from 2:00 p.m. to 12:00 a.m. Thursdays through Sundays at the Southampton location, and from 11:00 a.m. to 11:00 p.m. Tuesdays and Wednesdays in the Madison Avenue location (approximately 64 hours per week). However, Defendants constantly required him to work beyond his regularly scheduled hours.

197.    From approximately September 2011 until on or about December 2011, Plaintiff Olmedo was scheduled to work from 11:00 a.m. to 11:00 p.m. six days a week at the Madison avenue location (approximately 72 hours per week).

198.    From December 2011 to the present date, Plaintiff Olmedo has been scheduled to work from 11:00 a.m. to 11:00 p.m. on Tuesdays and Thursdays, and from 3:00 p.m. to 12:00 a.m. on Wednesdays, Fridays and Saturdays at the Madison Avenue location (approximately 51 hours per week).

199.    Defendants only have permitted Plaintiff Olmedo to take a 15-minute lunch break. However, Defendants time recording system falsely recorded that Plaintiff Olmedo had taken an hour for lunch.

200.    Throughout his employment with Defendants, Plaintiff Olmedo has been paid his wages by check.

201.    From approximately May 2009 to April 2010 Plaintiff Olmedo was paid a salary of $500.00 per week.

202.    From approximately May 2010 to the present, Plaintiff Olmedo at an hourly rate of $8.52 per hour for the first 40 hours, and $12.78 for the next 10 to 20 hours, for a total of approximately 50-60 hours per week.

203.    From December 2011 to the present date, Plaintiff Olmedo has not been paid for 5 to 6 weeks of work.

204.    Throughout his employment with Defendants, Plaintiff Olmedo's pay did not vary based on actual hours worked.

205.    Although Defendants have provided Plaintiff Olmedo with a statement accounting for his alleged hours worked, it does not accurately reflect any of the hours he has worked over 60 each week.

206.    No notification, either in the form of posted notices, or other means, was ever given to Plaintiff Olmedo regarding overtime and wages as required under the FLSA and NYLL.

207.    Although Plaintiff Olmedo has been required to keep track of his time worked, the system falsely has attributed one hour breaks when in fact he only has 15 minutes. In addition, the system does not reflect any hours Plaintiff Olmedo has worked over 60 in a week.

*Defendants' General Employment Practices*

208.    At all times relevant to this complaint, Defendants maintained a policy and practice of requiring Plaintiffs and all similarly situated employees to work in excess of forty (40) hours per week without paying them appropriate minimum wage and/or overtime compensation, or spread of hours compensation, as required by federal and state laws.

- 30 -

209.    Plaintiffs, and upon information and belief, all similarly situated employees, were paid the same flat rate each pay period regardless of the actual hours worked.

210.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, resulting in Plaintiffs' effective rate of pay falling below the required minimum and overtime wage rate.

211.    Defendants failed to post required wage and hour posters in the restaurant, and did not provide Plaintiffs with statutorily required wage and hour records or statements of their pay received, in part so as to hide Defendants' violations of the wage and hour laws, and to take advantage of Plaintiffs' relative lack of sophistication in wage and hour laws.

212.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain accurate and complete timesheets and payroll records.

213.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for (1) their full hours worked, (2) for overtime due, and (3) for spread of hours pay.

214.    Defendants also failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

*Defendants' Tip Practices*

215.    Plaintiffs have been victims of Defendants' common policy and practices violating their rights under the FLSA and New York Labor Law by willfully denying them earned tips.

- 31 -

216.   Plaintiffs were employees who, during their employment with Defendants were treated as "tipped employees" who customarily and regularly earn more than $30.00 per month in tips and were required by Defendants to participate in a tip-pooling scheme.

217.   As part of their regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice includes, *inter alia*, the following:

    a.   depriving restaurant employees of tips earned during the course of employment;

    b.   improperly taking a "tip credit" against busboy wages; and

    c.   keeping a portion of the tips earned by its employees.

218.   Defendants unlawfully misappropriated a portion of charges purported to be gratuity, received by Plaintiffs and other restaurant employees in violation of New York Labor Law § 196-d (2007). Plaintiffs were required to pool all of their tips, and to give the money to the manager, who was supposed to divide the money amongst the busboys and waiters.

219.   However, the manager did not pay Plaintiffs and busboys, food runners, bartenders, and waiters all of their tips.

220.   Under the FLSA and the NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.

221.   Defendants have taken gratuities belonging to the wait staff and unlawfully diverted them to managers and other employees who are not entitled to share in the tip pool at the Restaurants, thereby preventing the wait staff from retaining tips in violation of the FLSA and NYLL.

222.    In doing so, Defendants diverted well in excess of one hundred thousand dollars in the wait staff's tips each year to non-tipped employees.

223.    Because Defendants established an illegal tip-pooling scheme at the Restaurants, they are not entitled to reduce the minimum wages of Plaintiffs and the other waiters employed at the restaurant by applying the tip credit allowance that is available under the FLSA and the NYLL.

224.    Defendants' improper application of the tip credit deprived plaintiffs and other similarly situated employees at the Restaurants of their statutory minimum wage under the FLSA and the NYLL.

## FLSA COLLECTIVE ACTION CLAIMS

225.    Plaintiffs bring their FLSA minimum wage, overtime, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class"), i.e., persons who are or were employed by Defendants, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

226.    At all relevant times, Plaintiffs, and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them at a one and one-half their regular rates for work in excess of forty (40) hours per workweek, and willfully failing to keep records required by the FLSA. The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### (Violation of the Minimum Wage Provisions of the FLSA)

- 33 -

227.    Plaintiffs repeat and realize all paragraphs above as though fully set forth herein.

228.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiffs, control their terms and conditions of employment, and determine the rate and method of any compensation.

229.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

230.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

231.    Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

232.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

233.    Plaintiffs have been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### (Violation of the Overtime Provisions of the FLSA)

234.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

235.    Defendants, in violation of the FLSA, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of 29 U.S.C. § 207 (a)(1).

236.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

237.    Plaintiffs have been damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### (Violation of the New York Minimum Wage Act)

238.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

239.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiffs, control their terms and conditions of employment, and determine the rates and methods of any compensation.

240.    Defendants, in violation of the NYLL, paid Plaintiffs less than the minimum wage in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor.

241.    Defendants' failure to pay Plaintiffs minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

242.    Plaintiffs have been damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION



243.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

244.    Defendants, in violation of the NYLL § 190 *et seq.* and associated rules and regulations, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

245.    Defendants failed to pay Plaintiffs in a timely fashion, as required by Article 6 of the New York Labor Law.

246.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

247.   Plaintiffs have been damaged in an amount to be determined at trial.

### of the

248.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

249.   Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of New York Lab. Law §§ 190 *et seq.* and 650 *et seq.* and the wage order of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 137-1.7 and 137-3.11.

250.   Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of New York Lab. Law § 663.

251.   Plaintiffs have been damaged in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION

### (UNLAWUL DEDUCTIONS IN VIOLATION OF THE NEW YORK LABOR LAW)

252.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

253.   At all relevant times, Defendants were Plaintiffs' employers (and the FLSA Class members) within the meaning of the N.Y. Lab. Law §§ 2 and 651.

254.   New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity of any charge purported to be a gratuity for an employee.

255.   Defendants knowingly and intentionally retained a portion of Plaintiffs' (and the

FLSA Class members) tips in violation of the NYLL and supporting Department of Labor

Regulations.

256.    Plaintiffs (and the FLSA Class members) have been damaged in an amount to be

determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants:

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the pendency of this action, and permitting them promptly to file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants have violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA class members;

(c)     Declaring that Defendants have violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA class members;

(d)     Declaring that Defendants have violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violation of the provisions of the FLSA was willful as to Plaintiffs and the FLSA class members;

(f)     Awarding Plaintiffs and the FLSA class members damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs and the FLSA class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as

- 38 -

applicable pursuant to 29 U.S.C. § 216(b);

      (h)    Declaring that Defendants have violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs and the members of the FLSA Class;

      (i)    Declaring that Defendants have violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs and the members of the FLSA Class;

      (j)    Declaring that Defendants have violated the Spread of Hours Wage Order of the New York Commission of Labor as to Plaintiffs and the members of the FLSA Class;

      (k)    Declaring that Defendants have violated the recordkeeping requirements of the NYLL with respect to Plaintiffs' and the FLSA class members' compensation, hours, wages; and any deductions or credits taken against wages;

      (l)    Declaring that Defendants' violations of the New York Labor Law and Spread of Hours Wage Order were willful as to Plaintiffs and the FLSA class members;

      (m)    Awarding Plaintiffs and the FLSA class members damages for the amount of unpaid minimum and overtime wages, damages for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable;

      (n)    Awarding Plaintiffs and the FLSA class members liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, spread of hours pay, and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable;

      (o)    Awarding Plaintiffs and the FLSA class members pre-judgment and post-judgment interest as applicable;

(p)    Awarding Plaintiffs and the FLSA class members the expenses incurred in this action, including costs and attorney's fees; and

(q)    All such other and further relief as the Court deems just and proper.

Dated: New York, New York
       April 18, 2012

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:    _____
       Michael Faillace [MF-8436]

       110 East 59th Street, 32nd Floor
       New York, New York 10022
       Telephone: (212) 317-1200
       Facsimile: (212) 317-1620
       *Attorneys for Plaintiffs*